## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES L. BROWN AND SANDRA
BROWN,

     Plaintiffs,

        v.

GREAT NORTHERN INSURANCE CO.,

     Defendant.

NO. 3:07-cv-0322

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Great Northern Insurance Company's Motion for Summary Judgment.  (Doc. 31.)  Defendant moves for summary judgment on Plaintiff James L. Brown's claim for bad faith pursuant to 42 Pa. Cons. Stat. § 8371.  Because there is no clear and convincing evidence by which a reasonable jury could find bad faith, the motion will be granted.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

## BACKGROUND

This action arises from a claim for underinsured motorist ("UIM") benefits under Plaintiff James L. Brown's automobile insurance policy.  The undisputed facts are as follows.  Plaintiff was involved in an automobile accident on February 7, 2001 from which he sustained injuries.  (Def.'s Statement of Material Facts ¶ 2, Doc. 32.)  At the time, he and his wife were named as the insured under a policy with Defendant which provided uninsured and underinsured motorist benefits in a total coverage amount of one million, six-hundred

thousand dollars ($1,600,000).  (*Id*. ¶ 1.)

On March 25, 2003, Plaintiff provided oral notice to Defendant that he intended to file a claim for UIM benefits under his policy.  (*Id*. ¶ 3.)  He followed this up with written notice in a letter dated March 28, 2003 which also requested Defendant's consent to his settlement with the tortfeasor's insurance company for its policy limits.  (*Id*. ¶ 5.)  Defendant consented to the settlement and requested a settlement demand for his UIM claim as well as copies of his complete medical file.  (*Id*. ¶ 6.)  Receiving no response, Defendant, through its claims examiners, made a number of renewed requests for information from Plaintiff over a period of nearly two (2) years.  (*Id*. ¶¶ 7-9, 12, 14, 17-20.)  Having received no communication from Plaintiff since March 2003, Defendant sent a letter to him on January 24, 2005 advising that if he did not respond within sixty (60) days, Defendant would assume he did not wish to pursue the UIM claim.  (*Id*. ¶ 23.)  Plaintiff responded to this letter through his counsel[1] on February 14, 2005.  (*Id*. ¶ 24.)  This letter described Plaintiff's alleged injuries, described his course of treatment as well as his ongoing pain, and notified Defendant of a wage loss component of the claim asserting Plaintiff would experience over three million dollars ($3,000,000) in future lost earning capacity.  (Doc. 32, Ex. L.)  He presented a demand for the full policy coverage amount of one million, six hundred thousand dollars ($1,600,000). (*Id*.)  He also enclosed a number of medical records from his treating doctors as well as other records such as x-rays, MRIs, and records of prescriptions.  (*Id*.)  He later

---

[1]     Plaintiff initially pursued the UIM claim himself.  (Brown Dep. 17:1-17:17.) He is an attorney and was practicing personal injury and worker's compensation law at the time.  (*Id*. 9:20-9:22, 12:4-12:10)  He testified in his deposition to experience representing hundreds of plaintiffs pursuing UIM claims.  (*Id*. 13:10-13:16.)  However, he eventually retained counsel to pursue his UIM claim on his behalf.  (*Id*. 31:10-31:16.)

supplemented these with additional records and medical bills sent to Defendant's counsel in July 2005. (Doc. 37, Ex. 3.)

Between receipt of Plaintiff's demand in February, 2005, and November 22, 2006, when the claim ultimately went to arbitration, Defendant made requests for several different kinds of information and documentation from Plaintiff in support of his UIM claim.   First, Defendant's counsel sent Plaintiff numerous authorizations throughout the time period for the release of medical records from his treating doctors, labs, and other medical record-holders. (Doc. 32, Exs. O, Q, R, S, CC, GG, HH, II.) Plaintiff generally responded by signing and returning them, although his turnaround time appears to have varied significantly, with some delays spanning several months. (*Compare* Doc. 32, Ex. N; Doc. 37, Exs. 1, 2, *with* Doc. 32, Ex. U; Doc. 37, Ex. 7.)

Second, by letter dated April 5, 2005, Defendant's counsel requested information regarding a pre-existing condition for which Plaintiff was treated in 1991. (Doc. 32, Ex. N.) The information was requested because Plaintiff alleged post-2001 injury to his cervical area and Defendant's records revealed that he underwent a cervical fusion in 1991. (Doc. 32, Ex. R.) Defendant's counsel believed the pre-existing injury could be relevant to the injuries claimed from the accident and consequently wanted the physician conducting an independent medical examination to review pre-2001 records before evaluating Plaintiff. (*Id.*) Receiving no response, Defendant's counsel made several repeated requests for the information. (Doc. 32, Exs. N, O, P, Q.) Plaintiff stated in his deposition testimony that Defendant's request was reasonable. (Brown Dep. 66:16-67:5, Oct. 3, 2008.) However, Plaintiff's counsel ultimately responded by letter dated August 4, 2005, refusing to provide any information regarding the pre-accident injury. (Doc. 37, Ex. 5.)

3

Third, by letter dated September 21, 2005, Defendant's counsel began requesting written permission to access Plaintiff's file relating to the first party benefits[2] he received from Defendant as a result of the same 2001 automobile accident.  (Doc. 32, Ex. T.)  The first party file contained information regarding his medical treatment.  (Def.'s Statement of Material Facts ¶ 11.)  Though first party and UIM benefits were claimed from the same company, Plaintiff's permission was necessary for the UIM claim examiners to view the first party file.  (*Id.*)  After Defendant's counsel renewed the request numerous times, (Doc. 32, Exs. U-AA, CC, DD), Plaintiff ultimately provided authorization to view the file on April 11, 2006 (Doc. 32, Ex. EE).  In his deposition testimony, Plaintiff stated that Defendant's request to view his first party benefits file is "a request that is made by all carriers in situations like this."  (Brown Dep.  69:10-69:12.)  However, he testified that one of the reasons he initially failed to give permission to view the file was because he felt it contained erroneous, adverse medical reviews and that the UIM evaluators would "jump all over that."  (*Id.* 69:22-70:19.)

Finally, after receiving notice of Plaintiff's wage loss claim through his counsel's letter of February 14, 2005, Defendant's counsel made several requests for documentation supporting the claim.  (Doc. 32, Exs.N, Q, GG, JJ, KK, MM.)  Plaintiff provided no documentary support for this claim until November 20, 2006, two days preceding the parties' arbitration hearing, at which point he provided a the report of a vocational expert.  (Def.'s Statement of Material Facts ¶ 49.)

The afternoon prior to arbitration, one day after receiving documentation supporting the wage loss claim, Defendant offered to settle Plaintiff's UIM claim together with his related

---

[2]      Defendant often refers to this file as Plaintiff's "PIP file" in its documents. (*E.g.*, Brown Dep. 33:6-33:23.)

first party benefits claim for a total of seven hundred seventy-five thousand dollars ($775,000), six hundred fifty thousand dollars ($650,000) of which was for the UIM claim. (Id. ¶ 50.) Plaintiff rejected this offer. (Id. ¶ 51.) The matter went to arbitration on November 22, 2006, and the panel awarded Plaintiff and his wife nine hundred sixty thousand dollars ($960,000). (*Id.* ¶ 48, 52.)

On January 19, 2007, Plaintiff and his wife filed the present action in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1.) Plaintiff brought a claim against Defendant for bad faith in its handling of his UIM claim, pursuant to 42 Pa. Cons. Stat. § 8371. Plaintiff's wife brought a claim against Defendant for bad faith in its handling of her related loss of consortium claim.[3] Defendant removed the action to this Court on February 20, 2007. (*Id.*) It then submitted its Answer with affirmative defenses on February 26, 2007. (Doc. 3.) Defendant filed the present motion on November 14, 2008, moving for summary judgment on Plaintiff's bad faith claim based on the handling of his UIM claim. (Doc. 31.) This motion has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.

---

[3]     Because Defendant does not address Plaintiff's wife's claim in its motion, the Court likewise does not address the claim.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

An action for bad faith in Pennsylvania is governed by 42 Pa. Cons. Stat. § 8371 which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371 (2008).  Though statute does not define the term "bad faith," the Third Circuit Court of Appeals predicted in *Northwestern Mutual Life Insurance Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005), that the Pennsylvania Supreme Court would define the term as set forth by the Pennsylvania Superior Court in *Terletsky v. Prudential Property and Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. Ct. 1984).  The *Terletsky* court defined bad faith as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

649 A.2d at 688 (quoting *Black's Law Dictionary* 139 (6th ed. 1990)) (citations omitted).

The *Babayan* court further held that, in order to recover on a bad faith claim, the insured must prove:

> (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that  the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim.

430 F.3d at 137.  Courts have not restricted § 8371 to an insurer's denial of a claim, allowing bad faith claims for other conduct, including an insurer's investigative practices.  *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006);*see also Aquila v. Nationwide Mut. Ins. Co.*, No. 07-cv-2696, 2008 U.S. Dist. LEXIS 101518 (E.D. Pa. Dec. 15, 2008) (bad faith claim for insurer's handling of insured's claim).

The insured has the burden of proving its bad faith claim by clear and convincing evidence.  *Babayan*, 430 F.3d 137.  Thus, the insured's burden in opposing a summary judgment motion is "commensurately high because the court must view the evidence presented in the light of the substantive evidentiary burden at trial."  *Id*. (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  "In sum, in order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence,'... that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness.  *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000) (quoting *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 356 (E.D. Pa. 1997)).

Defendant argues that Plaintiff cannot meet is burden because UIM claims are

adversarial in nature and it was entitled to conduct a reasonable investigation of Plaintiff's claim.  It argues that any delay in resolving the claim was caused by Plaintiff himself through his repeated failure to timely respond to what it asserts were reasonable requests for information necessary to evaluate his claim.

Plaintiff does not dispute that Defendant did not act in bad faith during the period between his initiation of the claim, in March, 2003, and February 14, 2005, when his counsel first provided Defendant with a demand and medical records documenting his treatment after the 2001 car accident.  However, he asserts that Defendant acted in bad faith by failing to timely evaluate his claim and offer settlement after he provided the insurer with medical records from doctors who treated his post-accident injuries.  Essentially, Plaintiff argues that he provided Defendant with enough medical information to value his claim.  Plaintiff also argues that, at the very least, Defendant should have been able to evaluate his claim and offer settlement after gaining access to his first party benefits file on April 11, 2006.  This is presumably because the first party file provided access to medical reviews conducted by evaluators of the first party claim, *i.e.*, an outside party's evaluation of Plaintiff's injury claims.

Defendant is correct in its assertion that UIM claims are adversarial in nature.  *See Allstate Prop. & Cas. Ins. Co. v. Vargas,* No. 06-cv-3368, 2008 U.S. Dist. LEXIS 67516, at *26 (E.D. Pa. Aug. 29, 2008) (a UIM claim is "inherently and unavoidably adversarial") (quoting *Zappile v. Amex Assur. Co.*, 928 A.2d 251, 256 (Pa. Super. Ct. 2007) (internal quotations omitted)).  An insurer is therefore entitled to investigate a claim and protect its interests, though it is certainly still bound by a duty to negotiate in good faith with the insured.  *See Condio*, 899 A.2d 1136, 1145 ("We hold that, when faced with a [UIM claim], an insurance company's duty to its insured is one of good faith and fair dealing.  It goes without

9

saying that this duty does not allow an insurer to protect its own interests at the expense of its insured's interests.  Nor does it require an insurer to sacrifice its own interests by blindly paying each and every claim submitted by an insured in order to avoid a bad faith lawsuit.").

Plaintiff is correct in his assertion that a delay in evaluating and settling a claim "may be a relevant factor in determining whether an insurer has acted in bad faith."  *Williams*, 83 F. Supp. 2d at 572.  "It is well-settled, however, that 'a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith.'"  *Aquila*, 2008 U.S. Dist. LEXIS 101518, at *32 (quoting *Williams*, 83 F. Supp. 2d at 572).   In determining whether delay is indicative of bad faith, "courts have looked to the degree to which a defendant insurer *knew* that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred."  *Kosierowski*, 51 F. Supp. 2d at 589 (emphasis in original).  Indeed, the Third Circuit Court of Appeals has affirmed a district court's holding that an approximately thirteen month period between notification of a UIM claim and its resolution, even if completely attributable to the insurer, without more, is not sufficient to establish bad faith.  *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 582-83 (E.D. Pa.) *aff'd without opinion*, 172 F.3d 860 (3d Cir. 1998).

These principles in mind, a reasonable jury could not find clear and convincing evidence of bad faith from the undisputed facts of this case.  Taking first, Plaintiff's argument that Defendant acted in bad faith by failing to evaluate his claim and engage in negotiations after Plaintiff provided it with medical records, the evidence shows that Plaintiff himself delayed Defendant's investigation of his claim.  While Plaintiff provided records, bills, and authorizations regarding his injuries and treatment after his 2001 car accident, he ignored

repeated requests for records on treatment of a pre-existing injury to the same body area allegedly injured in the accident and ultimately refused to provide such information. Additionally, Plaintiff ignored repeated requests for permission to view his first party benefits claim file relating to the same accident.  His deposition testimony indicates this hesitancy derived, at least in part, from a desire to hide adverse information in the file.  Though Plaintiff acknowledges Defendant's requests were reasonable or at least ordinary in the course of an insurer's claim investigation, he argues that Defendant should have evaluated his claim on the information he provided.  On the contrary, Defendant was not obligated to accept without question Plaintiff's determination of what information was relevant to the valuation of his claim.  Plaintiff has pointed to no evidence in the record, let alone clear and convincing evidence, "that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness." *Williams*, 83 F. Supp. 2d at 571.

Even assuming, as Plaintiff further argues, that Defendant had sufficient information to value Plaintiff's physical injury after Plaintiff ultimately provided authorization to view his first party benefits file on April 11, 2006, Defendant's failure to evaluate and offer settlement between that date and the November 22, 2006 arbitration is insufficient to establish bad faith. First, Plaintiff acknowledges that he did not provide any documentation to support his wage loss claim until November 20, 2006, despite repeated requests by Defendant.  Any offer of settlement before that point would thus not likely have included a meaningful valuation of Plaintiff's future lost earnings.  Second, in light of  *Quaciari*, a delay of just over seven months without other evidence of bad faith, is insufficient to establish bad faith even if attributable to the insurer's inaction.  As Plaintiff raises no evidence of bad faith other than Defendant's failure to resolve the claim prior to arbitration, Defendant is entitled to summary

judgment.

Of the cases cited by Plaintiff in support of his position, the nearest factually to the case at bar is *Heinlein v. Progressive N. Ins. Co.*, No. 05-cv-1769, 2007 U.S. Dist. LEXIS 51592 (W.D. Pa. July 17, 2007).  In *Heinlein*, the Court denied summary judgment on plaintiff UIM claimant's bad faith claim.  *Id*. at *16.  Although only about three months elapsed between the time defendant insurer arrived at an estimated value for plaintiff's claim, in August 2004, and its first offer of settlement in November 2004, the court nonetheless held that a reasonable jury could find Defendant acted in bad faith by failing to make an offer before arbitration commenced in September 2004.  *Id*. at **6, 14.  However, there are two distinctions that separate *Heinlein* from the present case.  First, the *Heinlein* court noted that "the undisputed facts describe a thorough investigation of the value of Plaintiffs' claim."  *Id*. *13.  The parties openly exchanged information that allowed defendant to arrive at a valuation that included economic loss, pain and suffering, and future medical expenses.  *Id*. at **4-6.  The facts of the present case reveal that Plaintiff's own actions prevented a comparably thorough investigation and valuation of his UIM claim.  Second, the *Heinlein* plaintiffs alleged several specific instances of alleged conduct in bad faith in addition to the delay in making a settlement offer.  *Id*. at **11-12.  The outcome is therefore not inconsistent with *Quaciari's* conclusion that a delay of that length, *without more*, would be insufficient to establish bad faith.  Plaintiff here does not point to evidence of bad faith apart from the delay.

**CONCLUSION**

For the foregoing reasons, the Court concludes that there is no clear and convincing evidence by which a reasonable jury could find bad faith against Defendant Great Northern Insurance Company.  The Court will therefore grant Defendant's motion for summary judgment on Plaintiff James L. Brown's bad faith claim.

An appropriate Order follows.


February 23, 2009 ____                    /s/ A. Richard Caputo ____
Date                                      A. Richard Caputo
                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES L. BROWN AND SANDRA
BROWN,

     Plaintiffs,

        v.

GREAT NORTHERN INSURANCE CO.,

     Defendant.

NO. 3:07-cv-0322

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this  23rd   day of February, 2009, **IT IS HEREBY ORDERED** that Defendant

Great Northern Insurance Company's Motion for Summary Judgment (Doc. 31) is

**GRANTED**.

                              /s/ A. Richard Caputo
                              A. Richard Caputo
                              United States District Judge